UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
COVINGTON

| | |
|---|---|
| CHRISTOPHER ESPER, ) | |
| ) | |
| Petitioner, ) | No. 2:22-CV-58-DLB-HAI |
| ) | |
| v. ) | RECOMMENDED DISPOSITION |
| ) | |
| WARDEN JESSIE FERGUSON, ) | |
| ) | |
| Respondent. ) | |
| ) | |

*** *** *** ***

On April 28, 2022, state prisoner Christopher Esper filed a *pro se* petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus, accompanied by a memorandum and exhibits. D.E. 1. The Warden responded in opposition. D.E. 17. Although prompted by the Court to file a reply (D.E. 18), Esper did not reply. The undersigned recommends that his petition be denied.

**I.**

Esper was convicted at trial of first-degree rape, victim under 12 years of age. The Kenton Circuit Court sentenced him to twenty-five years of imprisonment in case 14-CR-1022. On his direct appeal, the Kentucky Supreme Court described the background as follows:

> On September 28, 2014, Esper's six-year-old niece ("the victim") presented at the doctor with symptoms of vaginal discharge and burning during urination. Her lab test for gonorrhea came back positive. As a result, Detective Nick Klaiss began investigating the possible sexual assault of the victim. Because the case involved a juvenile, the Cabinet for Health and Family Services ordered that all the men in the victim's household be tested for gonorrhea, which included her step-grandfather and two uncles (one of whom was Esper). Only Esper tested positive for gonorrhea, and for the same strand as the victim.
>
> After learning of the lab results, Det. Klaiss went to the home of Esper's girlfriend on October 9, 2014, and told Esper that he needed him to come to the police station for an interview. At the station, Det. Klaiss read Esper his *Miranda*

rights; Esper then signed a waiver form indicating that he understood his rights and was willing to voluntarily talk with the police.

Esper initially denied having sexual contact with the victim. Eventually, Esper confessed that sexual contact with the victim had occurred one time after he had ingested two Xanax pills and while he was giving the victim a bath. Esper detailed the incident—he was standing outside of the bathtub and entered the victim's vagina from behind while she was standing in the bathtub, facing away from him. He said the intercourse lasted about two minutes. At trial, the victim described the incident similarly: she testified that Esper touched her private part "in a bad way" while she was in the bathtub. Esper wavered on when the incident occurred; he originally said last winter (February or March of 2014) then later said more recently, about two months ago (August or September of 2014). Esper eventually admitted that it occurred after his 18th birthday, which was July 26, 2014.

Near the end of the interrogation, Det. Klaiss asked Esper if he would like to write a letter to the victim. Esper said yes and proceeded to write the following:

> Dear [victim]: This is uncle Chris. Im writing this letter to you to let you know Im very sorry for my horrible actions. You are innocent. Your smart, funny and a blessing brought to this world. I seen you since you were a newborn and you're growing up so fast it seems like yesterday. *I will accept the punishment given to me.* I'm guilty and ashamed of my actions. You didn't deserve any of this. I hope oneday this will all be flushed down the drain and will be a great family all over again, you just keep going to school and having fun. Listen to mommy and grandpa. Danny too, he's your biggest uncle. I Love you and I am truly sorry. I will take help for this horrible behavior. Sincerely: uncle Chris.

(emphasis added). At trial, Det. Klaiss read this letter in its entirety to the jury, despite Esper's motion to redact the sentence, "I will accept the punishment given to me."

Leading up to trial, Esper filed a motion to suppress the recorded interrogation, arguing that he was not properly advised of his *Miranda* rights, and that any waiver of his *Miranda* rights was not voluntarily, knowingly, and intelligently made. Following a suppression hearing, the trial court denied Esper's motion, finding that he was properly advised of, and waived, his *Miranda* rights, and that Det. Klaiss's interrogation techniques were not unduly coercive so as to overcome Esper's free will.

*Esper v. Commonwealth ("Esper I")*, No. 2016-SC-000366-MR, 2018 WL 898215, at *1-2 (Ky. Feb. 15, 2018). The Kentucky Supreme Court affirmed the conviction and sentence on February

2

15, 2018. *Id*. at *13. Esper did not petition for a writ of certiorari from the United States Supreme Court.

On May 25, 2018, Esper filed a Rule 11.42 motion for post-conviction relief. The trial court denied relief on April 9, 2019. Esper was granted leave to file a late appeal. On September 17, 2021, the Court of Appeals affirmed the trial court's denial of postconviction relief. *Esper v. Commonwealth ("Esper II")*, No. 2019-CA-0937-MR, 2021 WL 4234166 (Ky. Ct. App. Sept. 17, 2021). The Kentucky Supreme Court denied discretionary review on April 20, 2022, in case 2021-SC-0451.

**In his federal habeas petition, Esper challenges prior court decisions related to (1) an unsuccessful motion to continue the trial, (2) alleged ineffectiveness of appellate counsel in arguing for suppression of Esper's interrogation, (3) the admission of Esper's unredacted confession letter at trial, and (4) trial counsel's handling of aspects of the victim's gonorrhea diagnosis and treatment. D.E. 1 at 5, 7, 8, 10; D.E. 1-1 at 13, 17, 30, 37. Esper also alleges (5) cumulative error and faults his appellate counsel for failure to argue cumulative error. D.E. 1-1 at 40.**

The Warden addresses each of these issues in his Answer. D.E. 17. The Court solicited a response from Esper. D.E. 18. But no response was filed by the November 21, 2022 deadline. Esper has made no filings since June 2022.

## II. Standard of Review for State Habeas Cases

A state prisoner has a statutory right to collaterally attack his conviction or sentence. *West v. Bell*, 242 F.3d 338, 346 (6th Cir. 2001). A state prisoner may seek federal habeas corpus relief on the ground that he is being held in custody in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a).

3

The Antiterrorism and Effective Death Penalty Act, Pub L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), requires "heightened respect" for factual findings and legal determinations made by state courts. *Sinkfield v. Brigano*, 487 F.3d 1013, 1016 (6th Cir. 2007).

Section 2254(d), as amended by AEDPA, provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

This is a "highly deferential" standard of review that is "difficult to meet." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). All the state court's factual findings are presumed to be correct and can be rebutted only by "clear and convincing evidence." *Sinkfield*, 487 F.3d at 1016; 28 U.S.C. § 2254(e)(1). Legal conclusions made by state courts also receive substantial deference under AEDPA. "[A] federal habeas court may overturn a state court's application of federal law only if it is so erroneous that there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents." *Nevada v. Jackson*, 569 U.S. 505, 508-09 (2013) (per curiam). Also, "circuit precedent does not constitute clearly established Federal law" under AEDPA. *Parker v. Matthews*, 567 U.S. 37, 48 (2012). In sum, "federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Woods v. Donald*, 575 U.S. 312, 316 (2015).

Therefore, the question before this Court is not merely whether the Kentucky courts were incorrect, but whether they were so wrong that their treatment of the law and facts was "unreasonable" under these deferential standards.

### III. Law Governing Ineffective Assistance Claims

Esper's petition includes claims of ineffective assistance of counsel ("IAC"). An ineffective-assistance-of-counsel claim presents a mixed question of law and fact. *Mitchell v. Mason*, 325 F.3d 732, 738 (6th Cir. 2003). To successfully assert an IAC claim, a defendant must prove both deficient performance and prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

To prove deficient performance, a defendant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. A defendant meets this burden by showing "that counsel's representation fell below an objective standard of reasonableness" as measured under "prevailing professional norms" and evaluated "considering all the circumstances." *Id.* at 688. However, a reviewing court may not second-guess trial counsel's strategic decisions. *Moss v. Hofbauer*, 286 F.3d 851, 859 (6th Cir. 2002). Thus, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (internal quotations omitted). "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.*

To prove prejudice under the second prong of *Strickland*, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. When evaluating prejudice, courts generally must consider the "totality of the evidence." *Id.* at 695. Courts may approach the *Strickland* analysis in any order, and an insufficient showing on either prong ends the inquiry. *Id.* at 697.

The Supreme Court has repeatedly commented on the interaction between AEDPA deference under § 2254(d) and *Strickland*'s standards of review. "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). Under § 2254, "[a] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.* Both standards are "'highly deferential' and when the two apply in tandem, review is 'doubly'" deferential. *Id.* at 105 (citations omitted). Under § 2254(d), "the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* Also, because the *Strickland* standard is a "general" standard, "the range of reasonable applications is substantial." *Id.*

In this case, the Kentucky Court of Appeals accurately described the *Strickland* standard and accurately allocated the burden to Esper when it analyzed and denied his IAC claims. *Esper*

6

*II*, 2021 WL 4234166, at *2.  Therefore, the Court must grant full double-deference to the state court's IAC decisions under § 2254(d).

### IV.  Ground One – Motion to Continue Trial

In his direct appeal, Esper argued that the trial court abused its discretion in denying his motion to continue the trial.  The Kentucky Supreme Court, applying Kentucky law, found no abuse of discretion.  *Esper I*, 2018 WL 898215, at *3-4.

Esper's argument to this Court is that the failure to continue his trial was the result of a *Cronic* error.  D.E. 1-1 at 13-16.  The rule of *Cronic* is that a defense attorney can be *so* ineffective that the defendant suffers a functional denial of counsel, for which a presumption of prejudice applies.  *United States v. Cronic*, 466 U.S. 648 (1984).

The problem here is that Esper did not raise this *Cronic* issue to the Kentucky courts.  This means his *Cronic* claim is unexhausted and therefore defaulted.

A federal court cannot grant habeas relief on a claim unless the petitioner "has exhausted the remedies available in the courts of the State[.]"  18 U.S.C. § 2254(b)(1)(A).  The rules concerning exhaustion and procedural default are created to ensure that state courts have the opportunity to address federal constitutional claims "in the first instance" before the claims are raised in federal habeas proceedings.  *Coleman v. Thompson*, 501 U.S. 722, 732 (1991).

A petitioner may overcome default by showing "cause" and "prejudice" for failing to exhaust the claim.  *Williams v. Mitchell*, 792 F.3d 606, 613 (6th Cir. 2015).  "[O]nly where a prisoner is impeded or obstructed in complying with the State's established procedures will a federal habeas court excuse the prisoner from the usual sanction of default."  *Martinez v. Ryan*, 566 U.S. 1, 13 (2012).  The Supreme Court has explained that "cause"

> must be something *external* to the petitioner, something that cannot fairly be attributed to him: "[W]e think that the existence of cause for a procedural default

7

> must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."

*Coleman*, 501 U.S. at 753 (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). "A factor is external to the defense if it 'cannot fairly be attributed to' the prisoner." *Davila v. Davis*, 137 S. Ct. 2058, 2065 (2017) (quoting *Coleman*, 501 U.S. at 753). "Such factors may include 'interference by officials,' attorney error rising to the level of ineffective assistance of counsel, and 'a showing that the factual or legal basis for a claim was not reasonably available.'" *Cvijetinovic v. Eberlin*, 617 F.3d 833, 837 (6th Cir. 2010) (quoting *Hargrave-Thomas v. Yukins*, 374 F.3d 383, 388 (6th Cir. 2004)).

Esper's *Cronic* claim has not been raised before the Kentucky courts. Esper provides no basis for a finding of cause or prejudice to excuse the default. The Warden raised this procedural issue. D.E. 17 at 10. But Esper filed no reply. Because this claim appears unexhausted, the Court cannot grant relief on this ground.

## V. Ground Two – IAAC on Suppression of Statements

Esper, through counsel, argued on direct appeal that the trial court erred in denying his pretrial motion to suppress his recorded interrogation. *Esper I*, 2018 WL 898215, at *4-5. The Kentucky Supreme Court found the interrogation was properly admitted, although two Justices dissented on this issue. In his state post-conviction motion, Esper then argued he received ineffective assistance of appellate counsel ("IAAC") in that his lawyer on appeal poorly argued this issue. The Court of Appeals found:

> Esper's IAAC claim fails because it does not satisfy the criteria for such claims established in *Hollon v. Commonwealth*, 334 S.W.3d 431 (Ky. 2010)[, the case in which Kentucky recognized IAAC as a viable claim]. "In *Hollon*, [the Kentucky Supreme Court] recognized that IAAC claims premised upon appellate counsel's alleged *failure to raise a particular issue on direct appeal* were cognizable in Kentucky." *Commonwealth v. Pollini*, 437 S.W.3d 144, 147 (Ky. 2014)

8

> (emphasis added). But Esper's appellate counsel did not fail in this regard. The "particular issue" Esper identifies is "his claim that his confession was obtained through unconstitutional means." (Record (R.) at 373.) As the circuit court indicated, "his appellate counsel briefed the issue to the Supreme Court which gave careful consideration to the argument before denying the claim." (*Id.*) As a matter of law, a claim that counsel should have been more persuasive in his or her appellate advocacy will not support an IAAC claim.

*Esper II*, 2021 WL 4234166, at *3.

Esper argues to this Court that his appellate counsel should have argued that his interrogation statements violated *Miranda* rather than arguing they were involuntarily coerced. D.E. 1-1 at 19. To be clear, the underlying motion to suppress before the trial court argued that the interrogation was obtained in violation of *Miranda*. *See Esper I*, 2018 WL 898215, at *2. The Kentucky Supreme Court found "Det. Klaiss read Esper his *Miranda* warnings, which Esper chose to waive by signing the *Miranda* waiver form." *Id*. at *10. Justice Venters, in dissent, took issue with the majority's finding that there was a valid *Miranda* waiver. *Id*. at *13-16 (Venters, J., dissenting). Little wonder, then, that the Court of Appeals found no ineffective assistance on account of appellate counsel's alleged failure to raise the *Miranda* issue. How could there be prejudice when the Kentucky Supreme Court clearly considered this issue?

On the federal side, IAAC claims are subject to analysis under *Strickland*. *Smith v. Robbins*, 528 U.S. 259, 285 (2000). This includes the presumption that counsel provided reasonable professional assistance. *Hutton v. Mitchell*, 839 F.3d 486, 501 (6th Cir. 2016). Counsel does not have to "raise every possible issue in order to render constitutionally effective assistance." *Id*. In *Smith*, the Supreme Court explained that "appellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith*, 528 U.S. at 288. IAAC is "difficult" to demonstrate. *Id*. "Generally, only when ignored issues are clearly

9

stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Id*. (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)). Thus, to demonstrate deficient performance, Esper must show that the issues he raises are "clearly stronger" than the ones his appellate counsel raised. *Hutton*, 839 F.3d at 501; *Bourne v. Curtin*, 666 F.3d 411, 414 (6th Cir. 2012); *Hoffner v. Bradshaw*, 622 F.3d 487, 505-06 (6th Cir. 2010).

Here, the *Miranda* issue was squarely before the Kentucky Supreme Court. Esper's appellate counsel may have made a strategic decision to emphasize voluntariness over *Miranda*. But, given that the Kentucky Supreme Court clearly considered *Miranda* and the majority found a valid *Miranda* waiver on the facts, the Court cannot find IAAC under the standards discussed above. The Court of Appeals' ruling that there was no IAAC on this Ground did not involve an unreasonable application of clearly established federal law or an unreasonable determination of the relevant facts.

### VI.  Ground Three – Apology Letter

The Kentucky Supreme Court held that the apology letter was properly admitted in its entirety at Esper's trial. Esper argued on appeal that the statement, "I will accept the punishment given to me," should have been redacted. The Supreme Court found that the statement was relevant and not unduly prejudicial. *Esper I*, 2018 WL 898215, at *11. The Court noted, "If anything, his statement could have served as mitigating evidence, allowing the jury to infer that he was remorseful and willing to accept responsibility for his actions." *Id*.

Esper now argues that the confession letter was the fruit of the poisonous tree, with the tree being the *Miranda* violation discussed in the previous Section. D.E. 1-1 at 30-34. However, because the Kentucky Supreme Court found, not unreasonably, that the interrogation did not violate *Miranda*, the resulting confession letter cannot itself be fruit of the poisonous tree. To be

10

clear, the Court offers no opinion on whether Esper's interrogation violated *Miranda*. The Court only finds no unreasonable application of federal law or unreasonable assessment of the facts by the Kentucky Supreme Court on this record.

Esper further argues his appellate counsel was ineffective for failing to argue the letter was fruit plucked from a tainted tree. D.E. 1-1 at 34. As explained above, to show IAAC, Esper must show that the issue he argues should have been raised is clearly stronger than the issues his appellate counsel did raise.

However, appellate counsel actually argued to the Supreme Court of Kentucky that the confession letter should have been suppressed as fruit of the poisonous tree, *i.e.*, the result of an unconstitutional interrogation. D.E. 17-2 at 39 n.109. Esper's brief on direct appeal states, "If this Court rules that Chris' statement should have been suppressed, then the entire letter Chris wrote at the end of his statement would also be suppressed as a fruit of the invalid confession." *Id*. Because appellate counsel actually raised this issue, he could not have been ineffective for failing to raise it. This claim also fails on the merits. Esper has not shown deficient performance of appellate counsel or prejudice. The Kentucky courts made no unreasonable application of federal law or unreasonable determination of fact on this issue.

### VII. Ground Four – Expert Testimony Concerning Gonorrhea

Esper argues that trial counsel was ineffective for not adequately challenging the victim's gonorrhea diagnosis and treatment. D.E. 1 at 10. He says trial counsel should have presented expert testimony on these issues. D.E. 1-1 at 39-40. He argues that the Court of Appeals was unreasonable in finding no IAC on this Ground. *Id*. at 37-39.

The Kentucky Court of Appeals quoted Esper's brief, wherein he argued that his trial counsel "was ineffective in failing to request a *Daubert* hearing concerning [1] the tests

11

administered to determine if [his victim] had Gonorrhea and [2] whether Keflex could have treated it." *Esper II*, 2021 WL 4234166, at *3. The Court then reasoned:

> Whether both Esper and his victim had gonorrhea was relevant to the case. Gonorrhea is neither a new disease nor a rare one and has been diagnosed and treated for hundreds of years. Nevertheless, its diagnosis in a particular case may still be challenged. And Esper's counsel did challenge it. On April 21, 2019, Esper's counsel filed a "Motion for Daubert Hearing" and specifically sought to exclude "any testimony that the urine analyses for both Mr. Esper and for . . . the alleged victim, were positive for Neisseria Gonorrhoeae." (R. at 187.) The motion directs attention to that part of the lab records for the victim themselves that state "'[t]he performance of this test has not been verified in minor aged patients.'" (R. at 189.) In other words, Esper's counsel did exactly what he now complains she failed to do. As the circuit court pointed out, "Trial counsel had filed several Motions in Limine seeking to preclude" the Commonwealth's expert from testifying regarding how he diagnosed gonorrhea in this case. (R. at 374.) Certainly, we cannot say that defense counsel's handling of the expert testimony in this case "fell below an objective standard of reasonableness" such that "counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment[.]"

*Id.* (quoting *Commonwealth v. Tamme*, 83 S.W.3d 465, 469 (Ky. 2002), *as amended* (May 24, 2002)). Thus, the Court of Appeals found that trial counsel did not render constitutionally deficient performance. Trial counsel did what Esper now alleges had not been done. This finding does not involve an unreasonable application of federal law or unreasonable assessment of the facts. This claim fails on the merits.

As for Esper's Keflex argument, the Court of Appeals found:

> whether Keflex is an effective treatment for gonorrhea is not a fact in issue in this case. Esper disagrees, arguing that if his victim eventually tested negative for gonorrhea (which she did), and if the drug (Keflex) used to treat her does not cure gonorrhea, then the inference must be drawn that his victim's initial test for gonorrhea yielded a false positive. Although clever, the argument is unpersuasive. Even if we found a modicum of merit in the argument, we would still affirm the circuit court because the overwhelming evidence, including Esper's own confession, demonstrates that any failure of counsel here could not have resulted in prejudice to his case.

12

*Esper II*, 2021 WL 4234166, at *4 (Ky. Ct. App. Sept. 17, 2021), review denied (Apr. 20, 2022). Thus, the Court of Appeals found this IAC claim failed due to lack of prejudice. This finding likewise does not involve an unreasonable application of federal law or unreasonable assessment of the facts.

### VIII. Ground Five – Cumulative Error

Finally, Esper appears to argue in his § 2254 memorandum that he suffered cumulative error and his appellate counsel was ineffective for failing to argue cumulative error. D.E. 1-1 at 40. First, as Esper acknowledges, he did not raise a cumulative-error claim before the state courts. *Id*. at 42. This claim is therefore defaulted. Esper argues his default should be excused because the trial court failed to appoint him counsel on his postconviction motion. *Id*. at 42-43.

Even if this claim were not defaulted, it appears that cumulative-error claims cannot be heard via a § 2254 petition. Under § 2254(d)(1), it is only clearly established federal law, *as determined by the Supreme Court*, that can provide a basis for habeas relief. The Sixth Circuit has not interpreted Supreme Court precedent as permitting a "cumulative error" argument, but has instead held that "cumulative error" is not cognizable as a separate ground of relief under 28 U.S.C. §2254. *See Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006) ("[T]he law of this Circuit is that cumulative error claims are not cognizable on habeas because the Supreme Court has not spoken on this issue."); *accord Millender v. Adams*, 376 F.3d 520, 529 (6th Cir. 2004); *Harris v. Beckstrom*, No. 11-CV-375-DLB, 2013 WL 4039802, at *18 (E.D. Ky. Aug. 7, 2013).

Finally, even if the cumulative-error claim was not defaulted and could be addressed in a § 2254 petition, the claim fails on the merits. Esper has not shown any error of a constitutional magnitude on his prior four grounds. With no errors to aggregate, there can be no basis for relief on a theory of cumulative error. *See Getsy v. Mitchell*, 495 F.3d 295, 317 (6th Cir. 2007).

## IX. Conclusion

Esper has not shown that the Kentucky courts were unreasonable in rejecting Grounds Two through Four. And Grounds One and Five are procedurally defaulted. The undersigned therefore **RECOMMENDS** that his 28 U.S.C. § 2254 petition be **DENIED**.

The Court further **RECOMMENDS** that no Certificate of Appealability ("COA") should issue. A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard requires a petitioner to demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). In other words, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id*.

In this case, the well-reasoned opinions of the Kentucky courts on Grounds Two to Four are entitled to capacious deference under AEDPA. Reasonable jurists would not find that these courts rendered "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Ground One is unexhausted and therefore defaulted and Esper has not shown cause and prejudice. Ground Five for cumulative error is not a cognizable habeas claim, and is also unexhausted and therefore defaulted. Esper's claims are insufficiently viable to deserve encouragement to proceed further.

The Court further finds that no hearing is warranted. Review under § 2254 is "limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v.*

14

*Pinholster*, 563 U.S. 170, 181 (2011).  Evidence introduced in federal court has "no bearing" on § 2254 review.  *Id*. at 185.  Thus, this Court would be barred from considering any additional evidence in addressing Esper's claims.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Recommended Disposition, issued under subsection (B) of the statute.  *See also* Rules Governing Section 2254 Proceedings, Rule 8(b).  Within **fourteen days** after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, *de novo*, by the District Judge.  Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals.  *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *United States v. Wandahsega*, 924 F.3d 868, 878 (6th Cir. 2019).

This the 24th day of April, 2023.

Signed By:
Hanly A. Ingram
United States Magistrate Judge